STATE, DEPARTMENT OF HIGHWAYS, v.
ARTHUR WALLACE McWHITE.

176 N. W. (2d) 285.

April 3, 1970—No. 41979.

*Douglas M. Head,* Attorney General, *Richard H. Kyle,* Solicitor General, and *James M. Kelley* and *Michael Schwab,* Special Assistant Attorneys General, for appellant.

*Robins, Meshbesher, Singer & Spence, Gerald M. Singer,* and *Morley Friedman,* for respondent.

Heard before Knutson, C. J., and Rogosheske, Sheran, Peterson, and Frank T. Gallagher, JJ.

FRANK T. GALLAGHER, JUSTICE.

Appeal from an order of the district court reversing an order of the municipal court which had sustained the revocation of respondent's driver's license by the commissioner of highways.

On March 29, 1968, at 2:50 a. m., respondent, Arthur W. McWhite, was arrested by an officer of the Bloomington Police Department for operating a motor vehicle while under the influence of an alcoholic beverage in violation of Minn. St. 1967, § 169.121. He was arrested at 100th Street on Penn Avenue South in Hennepin County.

McWhite was taken to the Bloomington police station, where Sergeant Clay Nord advised him of his rights with respect to the criminal charges which would result from a violation of § 169.121 and with respect to the implied consent statute, Minn. St. 1967, § 169.123. Sergeant Nord also asked McWhite to submit to a breath or urine test to determine the alcoholic content of his blood. A direct blood test was neither offered nor available. McWhite asked the officer what he should do, but the officer told him he could not give advice, he could only tell him his rights. McWhite then delayed making a decision until his attorney arrived at 4:40 a. m., but by that time the officers had taken his refusal to make a decision as a refusal to take a breath or urine test. In that connection, the trial judge stated in his memo: "Although Respondent didn't unequivocally refuse to take either of the offered tests, he did not accept either one."

On April 19, 1968, it was certified to the commissioner of highways that McWhite had refused to submit to any chemical test and as a consequence the commissioner revoked his driver's license for a 6-month period, pursuant to Minn. St. 1967, § 169.123, subd. 4. McWhite demanded and received a hearing before the municipal court, which upheld the commissioner. He then appealed to the district court, which ruled that the failure to offer respondent a direct blood test meant that no action could be taken against him for refusing to take a breath or urine test.

The issue presented by this appeal is whether the commissioner of highways may revoke a driver's license for the driver's refusal to submit to chemical tests if a direct blood test was not made available to him.

The relevant portions of § 169.123, subd. 2, state:

"Any person who drives or operates a motor vehicle upon the public highways of this state shall be deemed to have given consent subject to the provisions of Laws 1961, Chapter 454, to a chemical test of his blood, breath, or urine for the purpose of determining the alcoholic content of his blood. * * * Any person may decline to take a direct blood test and elect to take either

a breath, or urine test, whichever is available, in lieu thereof, and either a breath or urine test shall be made available to the arrested person who makes such an election. No action shall be taken against the person for declining to take a direct blood test unless either a breath, or urine test was available."

The district judge in his memorandum stated:

"* * * The language clearly means that an Action for revocation under the implied consent law must be predicated upon the driver's declination to take a direct blood test, and cannot be predicated upon the declination to take some other alternative test.

"It should be noted that the last quoted provision requires *the availability* of an alternate test (breath or urine) in order to take action for declining a blood test. It would certainly follow therefore, that no action can be taken for declining to take a direct blood test unless it was available."

We believe that the district court correctly interpreted this statute. We find that the legislature has shown a preference for a direct blood test and therefore the direct blood test must be offered the arrested driver before his license may be revoked for refusing either of the two alternatives.

Consent under this statute is only given "to a chemical test." This can only mean that one and not all of the types of tests is consented to. Ringwood v. State, 8 Utah (2d) 287, 333 P. (2d) 943. If this section had read that consent is given "to a chemical test or tests" then the state would be correct in its contention that the arrested driver would have to submit to any enumerated test a police officer offered. Gottschalk v. Sueppel, 258 Iowa 1173, 140 N. W. (2d) 866; Timm v. State (N. D.) 110 N. W. (2d) 359.

Prior to the 1967 amendments Minn. St. 169.123 did not require that a direct blood test be available. At that time § 169.123, subd. 2, read in part: "Any person may elect to take a breath, saliva or urine test in lieu of a direct blood test; and no action

shall be taken for declining a test unless either a breath, saliva, or urine test was available." The 1967 amendments made it clear that the arrested driver's refusal to take a direct blood test is the only ground on which the commissioner of highways may base the revocation of a driver's license. It is no longer "declining a test" but "declining a direct blood test" that allows the commissioner to take action to revoke a license.

The legislature has clearly shown its preference for a direct blood test in Minn. St. 169.121, which makes it a misdemeanor to drive while under the influence of an alcoholic beverage. Subd. 2 of that section provides that a court may admit evidence of the amount of alcohol in a person's blood taken pursuant to § 169.123 as shown by an "analysis of his blood, or of his breath or urine if the person arrested elected to take such a test in lieu thereof." Clearly this presupposes that the police will offer a direct blood test and that if, and only if, a direct blood test is refused, then a urine or breath test can be offered and the results of either of these two tests will then be admissible. Prior to its amendment in 1967, this section allowed the court to admit into evidence the amount of alcohol in an arrested person's blood "as shown by a medical or chemical analysis of his blood, breath, urine or saliva." Minn. St. 1965, § 169.121, subd. 2. The 1967 amendment could only have been intended to show the legislative preference for a direct blood test.

Minn. St. 169.121, subd. 2, contains another indication of the legislature's preference for the blood test. Recognizing that breath and urine tests are not as reliable as a direct blood test,[1] the legislature has provided that when a breath or urine test is

[1] See, Note, 18 De Paul L. Rev. 753, 765; Slough and Wilson, *Alcohol and The Motorist: Practical and Legal Problems of Chemical Testing*, 44 Minn. L. Rev. 673, 778; Hunvald and Zimring, *Whatever Happened to Implied Consent? A Sounding*, 33 Mo. L. Rev. 323, 330; Note, 22 U. of Miami L. Rev. 698, 707. For a general discussion of the entire area of alcohol and the motorist, see Department of Transportation, 1968 Alcohol and Highway Safety Report, and, in particular, chapter 7, "Legal Approaches."

given, the percentage of alcohol in the person's blood necessary to establish prima facie evidence of sobriety or intoxication must be increased by 10 percent.

The state argues that it is too great a burden on law-enforcement agencies to require a direct blood test be offered.[2] This is a matter for legislative, not judicial, consideration. We can only interpret the statute as it was written. Minn. St. 645.16. Minn. St. 169.123, subd. 2, requires that a direct blood test be offered before an arrested person's license may be revoked for refusing to take a breath or urine test.

Affirmed.

---

[2] The California implied consent law requires that the police offer the arrested driver a direct blood, breath, or urine test. The arrested driver chooses the one he wants. California Vehicle Code, § 13353. The Connecticut implied consent law requires that the police offer the arrested driver a direct blood or breath test. The arrested driver chooses the one he wants. Conn. Gen. Stat. 1967 Supp., § 14-227b.