## STATE, CITY OF ST. LOUIS PARK, v. ROBERT BRIAN QUINN.

182 N. W. (2d) 843.

January 15, 1971—No. 42466.

*Wegner, Wegner & Amerman* and *J. Derck Amerman,* for appellant.

*Katz, Taube, Lange & Frommelt* and *Emanuel Z. Kopstein,* for respondent.

Heard before Knutson, C. J., and Murphy, Rogosheske, Peterson, and Rosengren, JJ.

MURPHY, JUSTICE.

Appeal from a judgment of conviction of driving while under the influence of an alcoholic beverage, Minn. St. 169.121, subd. 1, and an order denying defendant's motion for a new trial. Defendant seeks reversal on the ground that a blood test for determination of intoxication was not made available to him and that evidence of intoxication derived from a breathalyzer test should not have been received in evidence.

From the record it appears that, about 1:45 a. m. on May 22, 1969, defendant was observed by a St. Louis Park police officer operating an automobile at an excessive rate of speed in an erratic manner. The evidence was that, when apprehended, his manner and conduct indicated intoxication. At police headquarters, he was given the usual precautionary warnings and advised of the statute relating to the employment of a chemical test to determine the degree of his intoxication and the consequences which would follow if he chose not to take such test. He was informed that chemical tests were available to him and that he had the choice of taking a blood, breath, or urine test. After talking to his attorney by phone, he informed the officer that he would take the breath test. As a result of this test, it appeared that his blood contained 0.25 percent by weight of alcohol, an amount well above the minimum standards provided by § 169.121, subd. 2, as prima facie evidence of intoxication. His conviction followed trial by jury.

The standards by which intoxication may be presumptively determined are set forth in § 169.121, subd. 2. The so-called "implied consent" law, § 169.123, subd. 2, provides that any person who operates a motor vehicle upon the public highways of the state shall be deemed to have given his consent (subject to provisions of L. 1961, c. 454) "to a chemical test of his blood, breath, or urine for the purpose of determining the alcoholic content of his blood." Section 169.123, subd. 2, provides that the test shall be administered at the direction of a peace officer to a person lawfully arrested upon probable grounds to believe he has violated § 169.121, subd. 1, and that refusal to take one of the alternative tests may subject such person to revocation of his license. It also provides that such person may decline to take a direct blood test and "elect to take either a breath, or urine test, whichever is available, in lieu thereof * * *." The police officer explained that defendant was informed of the three tests. He also testified that it would be necessary to take defendant to a hospital to have a qualified person give the blood test. The urine test would involve analysis by the State Crime Laboratory, and the breath test was available at the police station.

■   Defendant contends that the police officials failed to make clear to him that he was entitled to have his condition determined by a blood test and relies upon language found in State Dept. of Highways v. McWhite, 286 Minn. 468, 471, 176 N. W. (2d) 285, 287, where it was said:

"The legislature has clearly shown its preference for a direct blood test in Minn. St. 169.121 * * *. Subd. 2 of that section provides that a court may admit evidence of the amount of alcohol in a person's blood taken pursuant to § 169.123 as shown by an 'analysis of his blood, or of his breath or urine if the person arrested elected to take such a test in lieu thereof.' Clearly this presupposes that the police will offer a direct blood test and that if, and only if, a direct blood test is refused, then a urine or

breath test can be offered and the results of either of these two tests will then be admissible."

On the basis of the record before us, we cannot agree that the McWhite case warrants a different result from that arrived at by the trial court. The record indicates that defendant was clearly informed that he could have any one of the three tests provided by law. After calling his attorney, he definitely expressed his willingness to take the breath test. We find no fault in the conduct of the police in offering and administering to defendant a test immediately available at the police station under the circumstances. Moreover, the trial court found that defendant was "specifically advised" of his right to a blood test. We are further persuaded that the record contains other evidence of defendant's appearance and condition which supports the verdict.

■ Defendant concedes that Sgt. David A. Schafer, the police officer who administered the breathalyzer test, was a qualified operator of that device. He asserts, however, that the court erred in admitting evidence of the results of the test before a foundation had been laid "by a chemical expert or other theoretical expert who understands the theory and mathematical formula behind the machine and the formula that translates volume of alcohol by weight in the breath to volume of alcohol by weight in the blood as required by statute." The educational background and qualifications of the officer to administer and evaluate tests was gone into at some length in the record. Defendant cites no statute or other Minnesota authority to support his contention that preliminary expert testimony was needed to qualify evidence of the breathalyzer test. It is generally held that the alcoholic content of the blood may be reliably determined by such a test, and testimony of the reading obtained upon a properly conducted test may be admitted without antecedent expert testimony that the reading is a trustworthy index of alcohol in the blood. 7 Am. Jur. (2d) Automobiles and Highway Traffic, § 332; State v. Miller, 64 N. J. Super. 262, 165 A. (2d) 829; State v. Johnson, 42 N. J.

146, 199 A. (2d) 809. The record here fairly establishes not only that the operator of the breathalyzer was properly certified but also that the machine was in proper working order and the chemicals were in proper condition. Hill v. State, 158 Tex. Cr. 313, 256 S. W. (2d) 93; State v. Greul, 59 N. J. Super. 34, 157 A. (2d) 44; Annotation, 77 A. L. R. (2d) 971, 974.

Affirmed.