STATE, DEPARTMENT OF HIGHWAYS, v. WILLIS
EUGENE CORNELIUS.

184 N. W. (2d) 779.

March 5, 1971—No. 42597.

*Warren Spannaus,* Attorney General, *Eric B. Schultz,* Acting Deputy Attorney General, and *Thomas G. Lockhart,* Special Assistant Attorney General, for appellant.

522

*Kenneth Meshbesher, Morley Friedman,* and *Robins, Meshbesher, Singer & Spence,* for respondent.

Heard before Knutson, C. J., and Nelson, Otis, Rogosheske, and Frank T. Gallagher, JJ.

PER CURIAM.

The driver's license of respondent, Willis Cornelius, was ordered revoked for a period of 6 months for failure to submit to a chemical test for intoxication pursuant to Minn. St. 169.123. On appeal to the Municipal Court of Hennepin County, the revocation order was rescinded. The matter is here on appeal by the state.

On December 22, 1969, at 2:10 a. m., two Bloomington police officers arrested respondent for driving under the influence of alcohol in violation of Minn. St. 169.121. To show probable cause for giving the test, one of the officers certified:

"I observed the defendant drive from 8133 E. Bloom Freeway down onto 35W northbound. He was weaving from curb to curb and twice hit the right hand curb of the entrance ramp. He continued weaving on 35W and went onto the right shoulder twice from 82nd St. to 78th St."

When respondent was taken into custody, an officer requested that he take a chemical test to determine intoxication and advised him that he could choose either a blood test, breath test, or urine test. In addition, he was warned that refusal to take the test would result in the revocation of his driver's license for 6 months. Respondent refused to take any of the tests and he was subsequently mailed notice of impending revocation. He requested a hearing before the Municipal Court of Hennepin County. There he testified that he was not given the option of a blood test. The trial court rejected his testimony and found that he had been offered all three tests. Nevertheless, the court seized on language contained in State, Department of Highways, v. McWhite, 286 Minn. 468, 471, 176 N. W. (2d) 285, 287, where we noted that the legislature has shown a preference for a direct blood test[1] and went on to state:

[1] Minn. St. 169.123, subd. 2, provides in part: " * * * Any person may decline to take a direct blood test and elect to take either a breath, or urine test, whichever is available, in lieu thereof, and either a breath or urine test shall be made available to the arrested person who makes such an election. No action shall be taken against the person for declining to take a direct blood test unless either a breath, or urine test was available."

"* * * Clearly this presupposes that the police will offer a direct blood test and that if, and only if, a direct blood test is refused, then a urine or breath test can be offered and the results of either of these two tests will then be admissible."

The trial court construed this to mean that the tests must be offered serially, and only after a blood test has been refused may a urine or breath test be offered. This, however, is not what we held in McWhite. We simply ruled the revocation invalid because "[a] direct blood test was neither offered nor available." 286 Minn. 469, 176 N. W. (2d) 286. Here, as the trial court found, a blood test was offered along with the urine and breath tests. Under such circumstance clearly there was compliance with the statute. State, City of St. Louis Park, v. Quinn, 289 Minn. 184, 182 N. W. (2d) 843; State, Department of Highways, v. Lauseng, 289 Minn. 344, 183 N. W. (2d) 926.

Respondent further contends that even if a blood test was offered there was no showing it was actually available. We find no merit in this contention. For one thing, having refused the test, respondent is in no position to complain. More important, however, is the fact that the officer testified that at the request of the police blood tests were routinely given at Fairview Southdale Hospital, where an intern was on duty at all times. There was no evidence to rebut this testimony. We hold the trial court was in error in finding that the state had not met its burden of proving that facilities for taking blood were available.

Reversed.