**Peter RODRIGUEZ, Petitioner-Appellee,**

**v.**

**Jack FULTON, Commissioner of Public Safety, Respondent-Appellant.**

**No. 54857.**

Supreme Court of Iowa.

Sept. 27, 1971.

Richard C. Turner, Atty. Gen., Clayton C. Mowers, and William W. Garretson, Asst. Attys. Gen., for respondent-appellant.

Dewayne A. Knoshaug, Clarion, for petitioner-appellee.

STUART, Justice.

Petitioner, who was charged with operating a motor vehicle while under the influence of an alcoholic beverage in violation of section 321.281, The Code, refused to take the breath test requested by a highway patrolman. When his attorney arrived five minutes later and learned of the request and refusal, he demanded a blood test for his client. The patrolman would not make arrangements for a blood test.

The commissioner revoked petitioner's driving privileges for failure to submit to a breath test under the Implied Consent Law Chapter 321B, The Code. The revocation was upheld in an administrative hearing and motorist appealed to the district court. The district court held the commissioner's action in revoking motorist's license was illegal because he was not first offered the blood test. The commissioner has appealed.

The sole question before us here is whether, under section 321B.3 a blood test must be offered and refused before a motorist's license to drive can be revoked for his refusal to take a breath, saliva or urine test. We have not previously considered this question. We now hold that the statute makes the offer and refusal of the blood test a condition precedent to a revocation under Chapter 321B and affirm the district court.

Section 321B.3 provides:

"Implied consent to test. Any person who operates a motor vehicle in this state upon a public highway, under such circumstances as to give reasonable grounds to believe the person to have been operating a motor vehicle while under the influence of an alcoholic beverage, shall be deemed to have given consent to the withdrawal from his body of specimens of his blood, breath, saliva, or urine, and to a chemical test or tests thereof, for the purpose of determining the alcoholic content of his blood, subject to the provisions hereinafter set out. The withdrawal of such body substances, and the test or tests thereof, shall be administered at the written request of a peace officer * * *. *If such person requests that a specimen of his blood not be withdrawn, then a specimen of his breath, saliva, or urine shall be withdrawn* at the written request of such peace officer; provided, however, that if such person refused to submit to any chemical testing, no test shall be given, and the provisions of section 321B.7 shall apply. Subject to the right of a person to refuse a blood test or to refuse to submit to any chemical testing, such peace officer may determine which of said substances shall be tested; and if he requires a breath test, he may also require a test of one other of said substances. * * *." (Emphasis supplied)

Although the statute does not directly state a blood test must be offered and refused before proceedings to revoke a license for refusal to take one of the other tests can lawfully be instituted, we believe this is necessarily implied from the portions of the statute underlined above. By the use of the word "then" the legislature said, in effect, that a specimen of breath, saliva or urine shall not be withdrawn until a person has been offered a blood test and he refused to take it.

It is not unreasonable to believe the legislature intended to make a distinction between the blood test and the other chemical tests. The chapter speaks in terms of the alcoholic content of the blood. The legislature may have preferred the direct test of the blood to the secondary tests. It is generally considered more reliable than the other tests. State Department of Highways v. McWhite (1970), 286 Minn. 468, 176 N.W.2d 285, 287.

One indication that the legislature accorded these tests different status with reference to what it believed was their reliability is shown by the fact that the statute explicitly provides that if the officer elects to administer a breath test, he may also require either the saliva or urine test.

Although the commissioner does not concede the original statutory language would justify, even if it stood by itself, our conclusion that the legislature intended that the blood test be offered first, he argues that the sentence inserted into Code section 321B.3 by the 63rd General Assembly makes it even clearer that only one test need be offered and the choice is the officer's. Reference is to the following language: "Subject to the right of a person to refuse a blood test or to refuse to submit to any chemical testing, such peace officer may determine which of said substances shall be tested; * * *."

■ This amendment does not change the obligation to first offer the blood test. This provision simply makes clear that the arrested motorist has an absolute right to refuse to take a blood test provided that he is willing to submit to a secondary test or tests chosen by the officer. It is primarily an accomodation to those motorists whose religious beliefs or physical condition make the blood test unsuitable. All others can take advantage of this absolute right.

The amendment merely codifies our holding in Gottschalk v. Sueppel (1966), 258 Iowa 1173, 140 N.W.2d 866. There the arrested motorist was offered a blood test which he refused. He was then offered a urine test which he also refused. It was argued on appeal that after the motorist's refusal to submit to the blood test, he had his choice as to which of the other three tests he would take and unless he refused to take all three his license could not legally be revoked. We rejected this argument stating:

"We think a fair construction of [section 321B.3] is that if an arrested motorist requests that a specimen of his blood not be withdrawn, the officer may *then* request a specimen of breath, saliva or urine for chemical testing. The choice as to which of the three is requested is the officer's, not the motorist's." 258 Iowa at 1184, 140 N.W.2d at 872. (Emphasis supplied)

The implication in the above quotation is that the arresting officer must first offer the blood test.

■ To briefly summarize our interpretation of section 321B.3, Code of 1971, we set out the procedure to be followed before a person's license to drive can be revoked under 321B for his refusal to submit to a chemical test.

(1) The arresting officer must first request a blood test.

(2) If, and only if, this request is refused, he can then request the breath, saliva, or urine test. Refusal of the arrested motorist to submit to any one of these tests is grounds for revocation.

(3) If the officer chooses the breath test, he can also request either a saliva or urine test. Refusal to submit to the second test is also grounds for revocation.

The decision of the district court is affirmed.

Affirmed.

MOORE, C. J., and RAWLINGS, BECKER and REYNOLDSON, JJ., concur.

UHLENHOPP, LeGRAND and REES, JJ., dissent.

MASON, J., takes no part.

UHLENHOPP, Justice (dissenting).

Petitioner Rodriguez contends that the implied consent statute requires an officer to request a blood test from a motorist before any other chemical test can be required.

The provision to be interpreted is § 321-B.3, Code, 1971. This section consists of five sentences. The first sentence states:

Any person who operates a motor vehicle in this state upon a public highway, under such circumstances as to give reasonable grounds to believe the person

to have been operating a motor vehicle while under the influence of an alcoholic beverage, shall be deemed to have given consent to the withdrawal from his body of specimens of his blood, breath, saliva, or urine, and to a chemical test or tests thereof, for the purpose of determining the alcoholic content of his blood, subject to the provisions hereinafter set out.

This sentence constitutes the implied grant of consent by a motorist. The consent is to the withdrawal of four different specimens: blood, breath, saliva, or urine. The consent to withdrawal of a specimen of breath, saliva, or urine is not conditioned on a prior request for a specimen of blood.

The second sentence of the section states:

The withdrawal of such body substances, and the test or tests thereof, shall be administered at the written request of a peace officer having reasonable grounds to believe the person to have been operating a motor vehicle upon a public highway of this state while under the influence of an alcoholic beverage, and only after the peace officer has placed such person under arrest for the offense of operating a motor vehicle while under the influence of an alcoholic beverage.

Here conditions are actually imposed: the officer must make written request for withdrawal of body substances, he must have reasonable grounds to believe the motorist to have been operating while under the influence of an alcoholic beverage, and he must have placed the motorist under arrest for that offense. But no condition is imposed that the officer request a blood test before any of the other tests can be required.

The third sentence is this:

If such person requests that a specimen of his blood not be withdrawn, then a specimen of his breath, saliva, or urine

shall be withdrawn at the written request of such peace officer; provided, however, that if such person refuses to submit to any chemical testing, no test shall be given, and the provisions of section 321B.7 shall apply.

This sentence grants a motorist absolute power to refuse a blood specimen without endangering his driver's license. But he has no corresponding power to refuse withdrawal of breath, saliva, or urine specimens without subjecting his license to revocation. Thus if the officer demands a urine specimen, no absolute power to refuse exists, nor does such power exist to refuse saliva or breath samples.

Petitioner would in effect add these italicized words to this third sentence: *The officer must first offer a blood test and* if such person requests that a specimen of his blood not be withdrawn, *thereafter* a specimen of his breath, saliva, or urine shall be withdrawn, etc. The difficulty with petitioner's reading of the sentence is that the legislature did not see fit to use those italicized words or add that condition. Cf. State, Dep't of Highways v. McWhite, 286 Minn. 468, 470, 176 N.W.2d 285, 287.

The third sentence does give a motorist a right to refuse all tests. Actually, the right is not without burdens, for by exercising the right the motorist subjects his license to revocation under § 321B.7, except for refusal of a blood specimen. Perhaps the right is granted to prevent forcible removal of a specimen of breath, saliva, or urine. See Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908.

The fourth sentence of the section states:

Subject to the right of a person to refuse a blood test or to refuse to submit to any chemical testing, such peace officer may determine which of said substances shall be tested; and if he requires a breath test, he may also require a test of one other of said substances.

Here the legislature expressly grants the officer the choice of the test to be given, subject to these limitations: the motorist has his absolute power to refuse a blood specimen without jeopardizing his license and he has his right to refuse all tests without subjecting himself to forcible withdrawal of a specimen. The first words of the sentence, "Subject to the right of a person to refuse a blood test", are not a statement that "The officer must first offer a blood test."

This fourth sentence does not in fact limit the officer's choice of tests to the other three tests by requiring a prior demand and refusal of the blood test. The provision is not that the officer may determine which "of the remaining three substances" shall be tested; it is that the officer may determine "which of said substances" shall be tested.

If the officer must first offer the blood test, and the motorist accepts it, the officer would have no choice of tests at all. Then how could it be said that the "peace officer may determine which of said substances shall be tested"?

If the officer selects and obtains a breath test, the fourth sentence allows him also to demand one other of the said substances (although the motorist may of course absolutely refuse a blood specimen). Thus if the officer demands and obtains a blood, saliva, or urine specimen, he may not demand one other of the specimens.

The final sentence states:

However, if such peace officer fails to provide such test within two hours after such arrest, no test shall be required, and there shall be no revocation under the provisions of section 321B.7.

This sentence contains no indication that a blood test is prerequisite to other tests. (Under the evidence in the case at bar, the Commissioner could find that the breath test was requested within two hours.)

Thus the statute contains no provision requiring that a blood test be first offered. Such a provision might or might not be a good one, but that is a policy matter for the legislature.

The judgment should be reversed.

LeGRAND and REES, JJ., join in this dissent.