David Alex **BIELEJESKI**, Petitioner, Appellant,

v.

**COMMISSIONER OF PUBLIC SAFETY**, Respondent.

**STATE of Minnesota**, Respondent,

v.

David Alex **BIELEJESKI**, Appellant.

Nos. CX–83–1963, C5–84–360.

Court of Appeals of Minnesota.

July 17, 1984.

John H. Erickson, Erickson, Casey, Erickson & Charpentier, Brainerd, for appellant.

Hubert H. Humphrey III, Atty. Gen., Donald J. Paquette, Asst. Atty. Gen., St. Paul, for respondent Com'r of Public Safety.

Stephen C. Rathke, Crow Wing County Atty., Susan J. Hudson, Asst. Crow Wing Cty. Atty., Brainerd, for respondent state of Minn.

Heard, considered, and decided by WOZNIAK, P.J., and SEDGWICK and LESLIE, JJ.

## OPINION

WOZNIAK, Judge.

This is an appeal from a November 15, 1983, order denying the defendant's petition for rescission of the revocation of his driver's license and a February 13, 1984, judgment convicting him of being in physical control of a vehicle while intoxicated. The defendant appealed both. The cases were consolidated on appeal. We affirm.

## FACTS

Two officers of the Brainerd Police Department responded to a call to Dorothy Hahnert's residence just outside the city limits of Brainerd, but within Crow Wing County. The officers met Diane Prushek at the residence and were told she just had a fight with appellant. He was found sleeping or passed out in the front seat of a car parked in front of the house with the keys in the ignition and the engine running.

The car was parked about fifteen feet off the roadway in a ditch. No accident had happened. One of the officers opened the car door and shook the sleeping appellant. He had difficulty getting up and standing, slurred his speech, and smelled of alcohol. The officer asked him to perform several field sobriety tests which he did with difficulty. No preliminary breath test was given. The officer arrested him.

At the Brainerd Police Station, the officer read appellant the Minnesota Implied Consent Advisory and requested a chemical sample. He agreed to give a breath sample. The officer used the standard Bureau

of Criminal Apprehension (B.C.A.) 21 point checklist for operating the breathalyzer. A room air sample test showed a reading of zero. The sample showed a blood alcohol concentration of .16%. A simulator solution test showed a reading of .112. Following Bureau of Criminal Apprehension instructions, the officer destroyed the test ampoule and placed the control ampoule in an unmarked box with a number of other control ampoules.

Following the test, the officer read a *Miranda* warning to the appellant and questioned him to complete the motor vehicle intoxication report.

### ISSUES

1. Whether the officer's appointment as a county deputy sheriff was valid to allow him to arrest the defendant outside the city boundaries, but within the county boundaries.

2. Whether the State laid a proper foundation for admission of the test results.

3. Whether the State unconstitutionally thwarted the defendant's defense by failing to save the test and the reference ampoules.

### ANALYSIS

■ 1. Appellant argues that Officer Dahl's arrest was not legal because the officer was outside his jurisdiction and a citizen's arrest would be improper. Dahl was primarily an officer of the Brainerd Police Department, but was also sworn in as a Crow Wing County Deputy Sheriff. Appellant attacks the appointment on grounds that, contrary to the statutory procedures, the officer's oath but not his appointment was written and filed.

Minnesota law mandates the procedure for appointing deputies:

> The sheriff shall appoint in writing the deputies and other employees, for whose acts he shall be responsible and whom he may remove at pleasure. Before entering upon his official duties, the oath and appointment of each shall be filed with the county recorder.

Minn.Stat. § 387.14 (1982). The officer's oath and appointment were introduced into evidence and were in written form and filed with the county recorder. This claim is without merit. The statutory procedures were followed, and the officer had power to arrest as a Crow Wing County Sheriff.

■ 2. By statute, one issue which may be raised at a revocation hearing under the implied consent law is "whether the testing method used was valid and reliable." Minn.Stat. § 169.123(6) (Supp.1983). A breathalyzer test reading conducted by a certified operator may be admitted into evidence if it is established that the machine was in proper working order and the chemicals in proper condition. *City of St. Louis Park v. Quinn*, 289 Minn. 184, 182 N.W.2d 843 (1971). The B.C.A. has set out a 21-step procedure to insure the accuracy of a breathalyzer test. Significantly, a reading of room air is taken which should give a reading of zero and a reading from a control solution of a known concentration provided by the B.C.A. which should give a reading between .10% and .12%. If the two tests give the expected results, "[t]his would seem to be almost incontrovertible proof not only that the chemicals are proper but that the instrument is in working order." *State, Dep't of Pub. Safety v. Habisch*, 313 N.W.2d 13, 16 (Minn.1981) (quoting Watts, *Some Observations on Police-Administered Tests for Intoxication*, 45 N.C.L.Rev. 34, 87 (1966)). Both tests were done in this case and both were within the B.C.A. guidelines. The test results were admissible.

■ The driver must then produce evidence to impeach the credibility of the test results. *Habisch*, 313 N.W.2d at 16. Appellant's grounds for appeal, that he might have burped, that he might have had a fever, that the simulator solution might have been low, that the machine might not have been warmed up, are merely an invitation to speculation and contrary to the evidence.

3. Appellant argues that by not saving the test and the reference ampoules used in

his breath test, the State destroyed possibly exculpatory evidence. Two ampoules are used in the test. Each holds approximately 3 ml. of a potassium dichromate solution (the solution also contains sulphuric acid to keep the solution acidic and to trap alcohol, a small amount of silver nitrate as a catalyst, and water). The solution, normally yellow, changes color in the presence of alcohol. The breathalyzer measures the amount of color and translates it into a blood alcohol percentage.

■ One ampoule is broken open. The subject's breath is bubbled through the test ampoule. Once used, it cannot be retested. Quoting the Committee on Alcohol and Drugs, National Safety Council, the Minnesota Supreme Court has noted that:

a scientifically valid procedure is not known to be available for the reexamination of a Breathalyzer ampoule that has been used in the breath test ... in order to confirm the accuracy and reliability of the original breath analysis.

*State v. Gross*, 335 N.W.2d 509, 511 (Minn. 1983). Since the ampoule cannot be retested, the test ampoule itself is immaterial. The test ampoule is as immaterial in a criminal D.W.I. prosecution as in a civil implied consent proceeding.

The second ampoule is not opened and simply acts as a reference from which the amount of color change in the test ampoule can be measured. As long as the reference ampoule's color remains constant, the amount of color change in the test ampoule can be accurately measured. A tinted piece of glass could just as well have been used as the test reference. As part of the B.C.A. checklist, the ampoule is gauged to make sure it contains the proper amount of solution. The chances of the solution changing color during the test in a sealed ampoule are so slight as to be nonexistent.

■ While it is true that the Fourteenth Amendment requires the State to disclose exculpatory evidence to defendants, see *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the same is not true for possible exculpatory evidence, see *Killian v. United States*, 368 U.S. 231, 82

S.Ct. 302, 7 L.Ed.2d 256 (1961). As the United States Supreme Court recently noted:

Whatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense. To meet this standard of constitutional materiality, see *United States v. Agurs*, 427 U.S. [97], at 109–110 [96 S.Ct. 2392 at 2400, 49 L.Ed.2d 342], evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and also be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.

*California v. Trombetta*, —— U.S. ——, ——, 104 S.Ct. 2528, 2534, 81 L.Ed.2d 413 (1984) (state not required to save breath sample).

■ There has been no showing by the defendant that there was any apparent exculpatory value in the reference ampoule. Other avenues were available to obtain comparable evidence. Appellant could have obtained an independent test, *Sturgeon v. Commissioner of Pub. Safety*, 350 N.W.2d 487, at 489 (Minn.Ct.App.1984), or could have cross-examined the officer about the condition of the reference ampoule. The State was not hiding or destroying evidence to circumvent the *Brady* disclosure requirements, but was acting "in good faith and in accord with their normal practices." *Trombetta*, —— U.S. at ——, 104 S.Ct. at 2534 (quoting *Killian*, 368 U.S. at 242, 82 S.Ct. at 308).

### DECISION

The officer's appointment as a county deputy sheriff was valid; therefore, the arrest outside the city limits of Brainerd was a valid arrest by a sheriff.

The State showed that the breathalyzer was operating within specifications and the defendant failed to rebut the evidence. The test was, therefore, valid.

By not saving the test and reference ampoules, the State did not unconstitutionally thwart the defendant's defense.

Affirmed.