Daniel Leonard **LOXTERCAMP,**
Petitioner, Respondent,

v.

**COMMISSIONER OF PUBLIC SAFETY,** Appellant.

No. C4–85–1624.

Court of Appeals of Minnesota.

March 11, 1986.

Review Denied May 22, 1986.

Kenneth Meshbesher, Meshbesher, Singer & Spence, Minneapolis, for respondent.

Hubert H. Humphrey, III, Atty. Gen., Joel A. Watne, St. Paul, for appellant.

Considered and decided by RANDALL, P.J., and PARKER, and FOLEY, JJ., with oral argument waived.

## OPINION

PARKER, Judge.

Respondent Daniel Loxtercamp's driving privileges were revoked when he failed a breathalyzer test with a .10 reading. He petitioned for judicial review, and the trial court rescinded the revocation. The Commissioner of Public Safety appeals from the trial court's order. We reverse.

## FACTS

On September 1, 1984, Loxtercamp was involved in an automobile accident. State Trooper Ronald Leasman arrived at the scene, observed indicia of intoxication, and asked Loxtercamp to take a preliminary breath test. Loxtercamp did so and failed the test. The Todd County Sheriff arrived, and Loxtercamp was brought to the sheriff's office. Deputy Sheriff Bryan Tebben read Loxtercamp the implied consent advisory and offered him a breath test.

Officer Richard Benson, a certified breathalyzer operator, administered Loxtercamp's breathalyzer test, using the 21-point breathalyzer operational checklist supplied by the Bureau of Criminal Apprehension. This included running room air and simulator tests and obtaining one analysis of Loxtercamp's breath. The room air and simulator test results were within acceptable limits. Loxtercamp's breath analysis yielded a reading of .10, and his license was revoked pursuant to the implied consent law.

At the hearing Loxtercamp called Dr. Richard Jensen, whom the court found to be an expert in the field of analytical chemistry with considerable experience with the type of breathalyzer Loxtercamp used. The court further found that in Jensen's

opinion, the type of breathalyzer used is not accurate to closer than .01 percent plus or minus and is not reliable when, as in Loxtercamp's case, only one test is performed.

Based on these findings, the trial court concluded the Commissioner did not prove that the testing method used was valid and reliable and did not prove the test results were accurately evaluated. It also concluded the Commissioner did not prove that Loxtercamp was operating a motor vehicle on September 1 with a blood alcohol concentration of .10 or more. The trial court rescinded the revocation of Loxtercamp's driving privileges, and the Commissioner appeals.

## ISSUE

Is a breathalyzer test, conducted in accordance with Bureau of Criminal Apprehension procedures and disclosing an alcohol concentration of .10, sufficiently reliable to support the revocation of respondent's driving privileges?

## ANALYSIS

■ The implied consent law authorizes the Commissioner of Public Safety to revoke a person's driver's license if the officer certifies that there was probable cause to believe the person was driving while under the influence of alcohol, and if "test results indicate an alcohol concentration of 0.10 or more." Minn.Stat. § 169.123, subd. 4 (1984).

The trial court rescinded the revocation of Loxtercamp's driving privileges, in part based on Dr. Jensen's testimony that the test is not accurate closer than plus or minus .01 of the reading obtained.

■ This issue was addressed in a case in which a breathalyzer result of .10 was challenged for the same reason:

The implied consent law, Minn.Stat. § 169.123 (1982), does not require the Commissioner of Public Safety to prove an alcohol concentration of .10 within an alleged margin for potential error.

*Grund v. Commissioner of Public Safety*, 359 N.W.2d 652 (Minn.Ct.App.1984).

Under Minn.Stat. § 169.123, subd. 4 (1982), the Commissioner must revoke a person's license when "the test results indicate an alcohol concentration of .10 or more." The statute clearly requires a concentration of .10—not .10 plus or minus an error factor. And, Minn.Stat. § 169.123, subd. 6(3) (1982), expressly limits the issue to be raised at a hearing to whether "the test results indicate an alcohol concentration of .10 or more at the time of testing," not whether or not the reading was .10, coupled with some margin of error.

*Schildgen v. Commissioner of Public Safety*, 363 N.W.2d 800, 801 (Minn.Ct.App. 1985); *see also Hrncir v. Commissioner of Public Safety*, 370 N.W.2d 444 (Minn.Ct. App.1985) (Commissioner need not prove alcohol concentration of .10 within a margin of error for intoxilyzer test results to be valid). The trial court erred as a matter of law when it rescinded the revocation of Loxtercamp's driving privileges based on its conclusion that the Commissioner did not prove an alcohol concentration of .10 or more.

The trial court also based its decision on Dr. Jensen's testimony that the breathalyzer test is not reliable when only one breath test is given. Loxtercamp contends the Commissioner has the burden of proving that the administration of a single breathalyzer test is a reliable means of testing alcohol concentration.

Breathalyzer test results have been challenged repeatedly over the years for various reasons. In *State, City of St. Louis Park v. Quinn*, 289 Minn. 184, 182 N.W.2d 843 (1971), the supreme court held that no antecedent expert testimony is necessary to admit the results of a breathalyzer test, especially when the record establishes that the test is conducted by a certified operator, that the machine is in proper working order, and that the chemicals are in proper working condition. *Id.* at 187–88, 182 N.W.2d at 845; *Bielejeski v. Commissioner of Public Safety*, 351 N.W.2d 664, 666 (Minn.Ct.App.1984). The Bureau of Criminal Apprehension has set out a procedure to be followed to ensure the test's accuracy. *State, Dept. of Public Safety v. Habisch*, 313 N.W.2d 13 (Minn.1981). In this case all 21 steps of the checklist were followed.

■ In *Habisch* the court noted that if the room air test and the simulator test give the expected result, "[t]his would seem to be almost incontrovertible proof not only that the chemicals are proper but that the instrument is in working order." *Id.* at 16 (quoting Watts, *Some Observations on Police-Administered Tests for Intoxication*, 45 N.C.L.Rev. 34, 87 (1966)); *Bielejeski*, 351 N.W.2d at 666. The police officer testified that both test results were within acceptable limits. The test result was not inadmissible because only one test of Loxtercamp's breath was taken.

Once the Commissioner establishes prima facie proof of the test's trustworthy administration, the driver is then free to come forth with evidence challenging the foundation. *Habisch*, 313 N.W.2d at 16; *Tate v. Commissioner of Public Safety*, 356 N.W.2d 766, 768 (Minn.Ct.App.1984). In this case there was no evidence presented attacking the administration of the test; instead, the reliability of the testing method used in the breathalyzer test itself was challenged.

■ Use of the breathalyzer is well accepted in Minnesota courts. So long as the test is accurately administered, the validity of the breathalyzer test result is recognized by this court. *State v. Kienast*, 357 N.W.2d 390, 391 (Minn.Ct.App.1984). The trial court erred as a matter of law when it determined the Commissioner did not prove that the testing method was valid and reliable and that the results were not accurately evaluated.

## DECISION

The trial court erred when it rescinded the revocation of respondent's driving privileges, because the Commissioner proved trustworthy administration of the breatha-

338

lyzer test, and no evidence was introduced challenging the procedure used. The Commissioner is not required to prove within a margin of error that respondent's alcohol concentration was .10 or more.

Reversed.