John Earl BARNA, Petitioner, Appellant,

v.

COMMISSIONER OF PUBLIC SAFETY, Respondent.

No. CO–93–970.

Court of Appeals of Minnesota.

Nov. 16, 1993.

William R. Kennedy, Hennepin County Public Defender, Peter W. Gorman, Asst. Public Defender, James M. Grochal, Asst. Public Defender, Minneapolis, for John Earl Barna.

Hubert H. Humphrey, III, Atty. Gen., Joel A. Watne, Asst. Atty. Gen., St. Paul, for Commissioner of Public Safety.

Considered and decided by HUSPENI, P.J., and CRIPPEN and SHORT, JJ.

## OPINION

SHORT, Judge.

John Earl Barna's driving privileges were revoked pursuant to the implied consent statute. See Minn.Stat. § 169.123, subd. 4 (1992) (requiring Commissioner of Public Safety to revoke a person's license if found driving a motor vehicle with an alcohol concentration of 0.10 or more). After a hearing, the trial court sustained that revocation. On appeal, Barna argues: (1) the trial court erred in admitting the results of his blood test; and (2) there is insufficient evidence to sustain the revocation. We affirm.

## FACTS

The arresting officer noticed Barna's vehicle stopped at a green light for a considerable amount of time around 2:06 a.m. Upon closer inspection, the officer saw Barna bent over the wheel of his car. When Barna drove his car onto the highway, the officer stopped him to see if there was a problem. Barna smelled of alcohol, he was unsteady on his feet, and his eyes were slow to react to light. Although Barna said he had not been drinking, he failed four field sobriety tests and the preliminary screening test. Barna was arrested for driving under the influence of alcohol and taken to North Memorial Medical Center (North Memorial) for testing.

North Memorial uses the alcohol dehydrogenase reaction method to test blood samples. That method is approved by the Bureau of Criminal Apprehension (BCA). The BCA has approved and monitored North Memorial's testing program since 1982.

A medical technologist at North Memorial drew Barna's blood. Following North Memorial's procedures, she: (a) cleaned the collection site; (b) deposited the blood samples into sterile tubes containing anticoagulant powder; (c) dated, initialed and put Barna's name on the tubes; (d) sealed the tubes and placed them into an envelope; and (e) allowed the officer to initial and record the time and date on the envelope, initialed the envelope herself, and placed it in a lockbox in a refrigerator. The sample was then tested by a medical technologist, who had performed alcohol tests for over two years. He removed the tubes from the lockbox, identified the tubes, checked the labels to insure the information matched the data written on the envelope, and analyzed the specimen.

The medical technologist calibrated the testing instrument using solutions supplied by a manufacturer and represented to have an alcohol concentration of 0.20. As a control to judge the accuracy of Barna's test, the medical technologist used a solution supplied by the College of American Pathologists with a concentration of 0.15. Barna's blood sample was tested twice, producing readings of 0.106 and 0.104. The medical technologist recorded those test results on the envelope, in his workbook, and on the Certificate of Analysis. The trial court admitted Barna's test results into evidence over defense counsel's objection to the absence of certifications for the calibration solution and control solution.

## ISSUES

I. Did the trial court abuse its discretion by admitting Barna's blood test results?

II. Is there evidence to support the trial court's finding that Barna's alcohol concentration was 0.10?

## ANALYSIS

I.

■■■ Evidentiary rulings on materiality, foundation, remoteness, relevancy, or the cumulative nature of the evidence are committed to the sound discretion of the trial court and will be the basis for reversal only where that discretion has been clearly abused.

*Jenson v. Touche, Ross & Co.,* 335 N.W.2d 720, 725 (Minn.1983). The proponent of a scientific test must establish that the test is reliable and that its administration conformed to the procedure necessary to ensure reliability. *State v. Dille,* 258 N.W.2d 565, 567 (Minn.1977). Barna challenges the reliability of both the test and administration of the test.

■ Barna argues the test itself is unreliable. We disagree. The alcohol dehydrogenase method is one of the methods prescribed by the BCA. Minn.R. 7502.0700 (1991). Using this method, North Memorial passes regular proficiency tests sponsored by the BCA. In addition, the test is generally accepted by experts in the field. Jonathan Barnard, *Proof of Hospital–Performed Blood Alcohol Tests in Evidence,* 9 Am.Jur.Trial Advoc. 43 (1985); *see Daubert v. Merrell Dow Pharmaceuticals,* —— U.S. ——, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) (trial court must determine "reliability" of theory or test); *State v. Jobe,* 486 N.W.2d 407, 419 (Minn.1992) (admissibility of a scientific test requires a showing that the scientific technique has gained general acceptance among experts in the field). Under these circumstances, the trial court properly concluded the test provided reliable scientific evidence.

■ Barna also argues the procedures followed by North Memorial were unreliable because there was no certification of the composition of the calibration solution or control solution. We disagree. The record demonstrates: (a) the test was performed by qualified individuals following a procedure approved and tested by the BCA; (b) the technologists followed standard industry practice in relying on solutions supplied by manufacturers; and (c) there was no evidence the testing equipment was malfunctioning. Given these facts, the trial court did not abuse its discretion in admitting the results of Barna's test. *See State v. Quinn,* 289 Minn. 184, 188, 182 N.W.2d 843, 845 (1971) (to show the reliability of a Breathalyzer test, the state need only show that the machine was working properly, the operator was qualified, and the chemicals were in proper condition).

## II.

■ Barna also argues the trial court's finding that his alcohol concentration was 0.10 is not supported by the evidence because the acceptable margin of error of the test includes a possible reading of 0.099. We disagree. First, although a five percent variance would have been accepted on the control, a two percent variance was found at the time of Barna's test. No reading within a two percent range falls below the level of 0.10. Second, the implied consent statute does not require that the margin of error be considered. *Loxtercamp v. Commissioner of Public Safety,* 383 N.W.2d 335, 336–37 (Minn. App.), *pet. for rev. denied* (May 22, 1986); *Dixon v. Commissioner of Public Safety,* 372 N.W.2d 785, 786 (Minn.App.1986); *see* Minn. Stat. § 169.123, subds. 4, 6(3) (1992) (test results indicate an alcohol concentration of 0.10 or more). Under these circumstances, the trial court's finding that Barna's alcohol concentration was 0.10 is not clearly erroneous.

### CONCLUSION

Evidence of Barna's alcohol concentration was properly admitted into evidence, and supports the trial court's revocation of Barna's driving privileges.

**Affirmed.**