Leroy SCHEPER, Petitioner, Appellant,

v.

## COMMISSIONER OF PUBLIC SAFETY, Respondent.

### No. C7–85–1701.

Court of Appeals of Minnesota.

Jan. 21, 1986.

Samuel A. McCloud, Dean S. Grau, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Lawrence M. Schultz, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Heard, considered and decided by LANSING, P.J., and HUSPENI and LESLIE, JJ.

## OPINION

HUSPENI, Judge.

Appellant Leroy Scheper appeals from an order of the trial court that sustained the

revocation of his driver's license pursuant to Minn.Stat. § 169.123, subd. 4 (1984). On appeal Scheper alleges that the Intoxilyzer test results lacked sufficient foundation and the trial court erred in receiving those results into evidence. We affirm.

## FACTS

On May 26, 1985, at approximately 12:49 a.m., Officer David Fraser arrested appellant Leroy Scheper for driving while intoxicated. Fraser read Scheper the implied consent advisory, and Scheper agreed to take a breath test.

Fraser observed Scheper for fifteen to twenty minutes prior to administering the Intoxilyzer test to see whether Scheper put anything in his mouth, such as gum or cigarettes. Fraser said that the purpose of his observation was to determine whether Scheper ingested anything prior to the test. He testified that he did not observe Scheper to determine whether he belched.

Officer Steve Vaughn, a certified Intoxilyzer operator, performed an Intoxilyzer test on Scheper. The machine performed its internal diagnostic procedure, and the air blank test and calibration standard were within acceptable limits. Scheper provided two adequate breath samples. The first sample yielded a result of .157, with a replicate reading of .158. The second sample gave a reading of .161, with a replicate reading of .164. The final reading was .15, with a breath correlation of ninety-five percent.

Vaughn stated that if the officer who observes the subject does not do so properly, no opinion can be given as to whether or not the test value is correct or whether it is contaminated in some way. Vaughn also testified that in addition to ensuring that the subject does not have anything in his mouth, the officer should observe whether the person belches, because that could bring alcohol out of the stomach into the mouth area and affect the test results.

After the hearing, the trial court sustained the revocation. Scheper appeals.

## ISSUE

Did the trial court abuse its discretion when it admitted the results of the Intoxilyzer test into evidence, despite testimony that the police officer who observed appellant for fifteen minutes prior to the test did not watch for signs that appellant belched during that time?

## ANALYSIS

Scheper petitioned for judicial review of the revocation of his driver's license pursuant to Minn.Stat. § 169.123, subd. 5c (1984). Specifically, he challenges "whether the testing method used was valid and reliable." Minn.Stat. § 169.123, subd. 6(3)(b) (1984).

After the hearing was completed, the trial court stated that it started with a presumption that the testing was done properly and correctly, and the mere fact that the officer did not watch for the driver to belch did not necessarily mean that the driver belched and invalidated the sample.

It appears that the trial court employed an incorrect standard. The proper standard for a test is:

> The proponent of a chemical or scientific test must establish that the test itself is reliable and that its administration in the particular instance conformed to the procedure necessary to ensure reliability. Without a foundation guaranteeing the test's reliability, the test result is not probative as a measurement and hence is irrelevant.

*State v. Dille*, 258 N.W.2d 565, 567 (Minn. 1977) (citations and footnote omitted). A trial court's decision as to the admissibility of evidence will not be disturbed absent an abuse of discretion. *Tate v. Commissioner of Public Safety*, 356 N.W.2d 766, 767 (Minn.Ct.App.1984).

The results of an infrared breath-testing device are admissible in evidence without antecedent expert testimony when the test is performed by a person fully trained by the Commissioner. Minn.Stat. § 634.16 (1984). The testimony here indicated that the officer who did the testing

was certified to do so. Therefore, the Commissioner established that the test was reliable.

▮ Once the proponent shows the reliability of the procedure used, the other party must come forth with evidence showing reasons why the results of the tests were untrustworthy. *Kooi v. Commissioner of Public Safety*, 363 N.W.2d 487, 489 (Minn. Ct.App.1985) (citing *Dille*, 258 N.W.2d at 568).

Scheper does not challenge the reliability of the test itself. Instead he complains of the allegedly faulty procedure that Officer Fraser used. He argues that because Officer Fraser did not know that he should watch for indications that Scheper belched, the procedure necessary to ensure the test's reliability was not followed and, therefore, proper foundation was not laid. Scheper relies upon the testing officer's testimony that the subject should be observed for belching as well as ingestion and that, without proper observation, no opinion can be formed whether the test was contaminated.

In *Tate*, this court recognized that:

The proponent of a test can never absolutely eliminate possibilities of contamination, but must show the taking of steps which are reasonably aimed at eliminating the occurrence of contamination.

356 N.W.2d at 768. This court held in *Tate* that the trial court did not abuse its discretion in concluding that the Commissioner had met his burden of showing that the breath test was reliable. The challenge occurred because Tate was taken to the bathroom during the fifteen-minute observation period, where she was observed by a county employee. The officer testified that he had no reason to believe that Tate ate or drank anything and that she did not place anything in her mouth that could have affected the test results. We found it appropriate on this evidence that the driver offer evidence tending to show that the test was untrustworthy. *Id.*

In *Kooi*, a trial court rejected breathalyzer test results because the driver was not under observation for the fifteen to twenty minute period prior to the test. This court reversed the trial court and found that where the driver was under observation by one or more officers for the observation period, the driver admitted that she put nothing in her mouth during that period and there was no evidence that she was actually out of sight of both officers at any time, the Commissioner had met his burden of proving by a fair preponderance of evidence that the testing method was valid and reliable. *Kooi*, 363 N.W.2d at 489. We reached this result despite the fact that neither officer was absolutely certain that a door between the room where the driver sat and the room where the officers sat was open. *Id.* at 489.

In *Bielejeski v. Commissioner of Public Safety*, 351 N.W.2d 664 (Minn.Ct.App. 1984), this court noted that the driver's contention that he might have burped, or that other events might have occurred that could affect the test results, were "merely an invitation to speculation and contrary to evidence." *Id.* at 666. The driver must produce evidence impeaching the credibility of the testing results. *Id.*

▮ The testimony elicited from the testing officer here merely indicated that belching could affect the test result. *See Kooi*, 363 N.W.2d at 489. Scheper argues that because Fraser did not watch to detect belching, the observation was fatally flawed. Scheper further urges that those cases which require the driver to produce evidence impeaching the credibility of the test results can and must be distinguished, because here the officer was not properly discharging the observation requirements. We cannot make such a fine distinction. As even Scheper recognizes in his argument on appeal, belches are often concealed and may be difficult to detect. Here, even if Fraser had been specifically watching for belching, it is possible he would not have noticed it had it occurred. As in *Tate*, the duty to produce this kind of evidence showing that the test was untrustworthy is appropriately placed upon Scheper.

**DECISION**

The trial court did not abuse its discretion when it found that the Commissioner met his burden of proving the reliability of the testing procedures.

Affirmed.