**Maizie C. ENGEN, Respondent,**

v.

**COMMISSIONER OF PUBLIC SAFETY, Appellant.**

No. CO–85–1815.

Court of Appeals of Minnesota.

March 11, 1986.

Roger A. Gershin, Minneapolis, for respondent.

Hubert H. Humphrey, III, Atty. Gen., Jeffrey S. Bilcik, Asst. Atty. Gen., St. Paul, for appellant.

Considered and decided by LESLIE, P.J., and PARKER and CRIPPEN, JJ., with oral argument waived.

## OPINION

CRIPPEN, Judge.

Respondent's driver's license was revoked after she failed an Intoxilyzer test. The trial court rescinded the revocation, and the Commissioner appeals. We reverse.

## FACTS

Officers Jean Sutich and Robert Dole were on duty during the early morning hours of May 18, 1985. Sutich testified that they stopped and arrested respondent Maizie Engen on suspicion of driving while under the influence of alcohol at approximately 1:30 a.m. The officers placed respondent in the squad car to transport her to the police station. Respondent rode in the back seat of the squad car, Dole drove, and Sutich sat in the front passenger seat.

Sutich radioed the police station to let them know they were bringing in a suspect, and Sutich and Dole talked while driving back. Sutich estimated that the ride from the scene to the police station took about five minutes, so that they arrived back at the station at approximately 1:35 a.m. She testified that she did not watch respondent continuously during the ride to the station. Officer Dole testified that other than routine questions, he had no conversation with respondent. He did not watch her while he was driving.

Sutich, a certified Intoxilyzer operator, administered the test to respondent after they arrived at the station. She testified that prior to the administration of the test, she observed respondent for 15 to 20 minutes and did not observe her putting anything into her mouth. Prior to administering the test, Sutich asked respondent if she had put anything into her mouth, and she responded that she had not. The test was begun at 1:44 a.m. A .15 blood alcohol concentration was indicated.

Respondent Maizie Engen also testified. She agreed that they left the scene at approximately 1:30 a.m. and said that the ride took between five and ten minutes. Asked how she felt at the time, respondent testified: "Well, after I was arrested my stomach was uptight in knots as it is now. I didn't feel good." Asked if she was "belching or burping," she answered: "I felt like I had heartburn." She then affirmed a suggestion by counsel that she was belching and burping, but on cross-examination she reiterated that she "didn't feel good" and that she did not know for sure if she had belched.

Thomas R. Burr, a criminalist with the St. Paul Police Department, testified as to the procedure involved in the Intoxilyzer test. He stated that if the steps are not followed, the Intoxilyzer result is not reliable or valid. The 15 to 20 minute observation period is very important to ensure that subjects do not put anything in their mouths and to ensure that subjects do not bring any gastric content from the stomach into the mouth by burping or regurgitating. Either of these occurrences could contaminate the results of the test. For an accurate reading the sample should be from deep-lung air rather than a sample from the stomach or from something in the mouth.

Burr emphasized that during the observation period, the observer must actually watch the subject, not merely be in the

subject's presence. The 15 minute observation period is required by the State in the training course and in the Intoxilyzer manual. The observer should be fairly close to the individual, must have adequate light to see the person, must be able to hear the person, and must ensure that the subject is not contaminating the breath sample. Burr did not consider the back seat of a car as a place where the subject could be properly observed.

Burr testified that if a person burps or belches, the 15 minute period should start again, particularly if the burp or belch brings up gastric contents from the stomach. He stated that the gastric portion clears itself rapidly, probably in a minute or two, and it is not a problem with testing. Where there is actual regurgitation, liquid stays in the mouth longer and can contaminate the sample.

The trial court found from the evidence that the stop of respondent was made about 1:10 a.m., with an arrest time of 1:29 a.m., and a test time of 1:44. The court found, "The [respondent] testified that she has hypertension and that it is possible that she could have burped or belched." The trial court concluded:

> The [Commissioner's] reliance on the time that [respondent] was in the rear seat of the squad car without supporting testimony of actual reasonable observation to satisfy the requirement of 15 to 20 minutes of continuous observation in this case is not sufficient.

The court rescinded the revocation of respondent's driver's license. The Commissioner appealed from the trial court's order.

## ISSUE

Did the trial court abuse its discretion in disregarding the Intoxilyzer test result, holding that the Commissioner did not prove sufficiently that the test was reliable?

## ANALYSIS

The Commissioner must establish that officers who administered an Intoxilyzer test conformed to the procedure necessary to ensure its reliability. *State v. Dille*, 258 N.W.2d 565, 567 (Minn.1977). Once this is done, it is incumbent on the defendant to produce evidence showing reasons why the test was untrustworthy. *Id.* at 568. Unless the trial court abused its discretion, its decision must be affirmed. *Tate v. Commissioner of Public Safety*, 356 N.W.2d 766, 767 (Minn.Ct.App.1984).

Appellant Commissioner contends that there is no requirement that the respondent be continually and incessantly observed. *See Kooi v. Commissioner of Public Safety*, 363 N.W.2d 487, 489 (Minn.Ct.App. 1985). He argues that this case is similar to other cases in which a driver attacked the reliability of the test with mere speculation. *See, e.g., State, Dept. of Public Safety v. Habisch*, 313 N.W.2d 13, 16 (Minn. 1981). Respondent contends that the Commissioner must prove a continuous observation of a tested person.

■■ Where a driver alleges that he might have burped, might have had a fever, or otherwise alleges that occurrences could affect the test result, the allegations are merely "an invitation to speculation." *Bielejeski v. Commissioner of Public Safety*, 351 N.W.2d 664, 666 (Minn.Ct.App. 1984). Here respondent admitted the suggestion she was belching. However, the trial court found that she testified "that it is possible she could have burped or belched." This finding is sufficiently supported by respondent's testimony, and it requires the same conclusion reached in *Bielejeski*.

We agree that the Commissioner must show precautions were taken to guard against the testing of contaminated breath samples. We cannot agree that a rule of law on the degree of precaution, if ever appropriate, would support exclusion of a test on the évidence here, where observations and inquiries by the test operator did occur, and where the question of contamination was confined to whether respondent had belched. In the circumstances here,

exclusion depended on a finding that a belch did occur.

## DECISION

■ Exclusion of an Intoxilyzer test result was an abuse of discretion where observations for contamination occurred as they did here and where evidence does not show actual contamination before testing began.

Reversed.