**Richard Allan McGREGOR,**
**Petitioner, Respondent,**

v.

**COMMISSIONER OF PUBLIC SAFETY, Appellant.**

No. C8–85–2257.

Court of Appeals of Minnesota.

May 6, 1986.

Samuel A. McCloud, Dean S. Grau, Minneapolis, for respondent.

Hubert H. Humphrey, III, Atty. Gen., Craig R. Anderson, Sp. Asst. Atty. Gen., St. Paul, for appellant.

Heard, considered and decided by POPOVICH, C.J., and NIERENGARTEN and RANDALL, JJ.

## OPINION

POPOVICH, Chief Judge.

Respondent was arrested for driving while under the influence and took an Intoxilyzer test, which produced a result of .11. The Commissioner of Public Safety revoked his driving privileges, and respondent petitioned for judicial review. The trial court rescinded the revocation. The Commissioner appeals. We affirm.

## FACTS

Officer Kristine Arneson stopped respondent Richard Allan McGregor for speeding.

She observed indicia of intoxication, administered several field sobriety tests, and placed him under arrest for driving while under the influence of alcohol. Arneson read respondent the implied consent advisory and offered him a breath test, which he agreed to take. She then drove him to the Scott County Jail.

Arneson testified she observed respondent for 15 minutes prior to the test, sitting at her desk, while respondent sat in a chair in front of her. She filled out police reports and acknowledged while she was writing she was not able to observe respondent. Arneson said she watched for his reactions, how he sat, what his eyes looked like, and what he said. However, she testified she did not know the specific purpose of the 15 minute observation period, had no training, was not told what she was supposed to watch for during the 15 minute period, but said she did not observe anything unusual.

Officer Larry Williams, a certified Intoxilyzer operator, administered the test to respondent. He did not participate in the 15 minute observation period. On the Intoxilyzer record form, in the "remarks" section, he indicated he checked respondent's mouth. The Intoxilyzer test produced a reported value of .11.

The Commissioner revoked respondent's driving privileges for failing the test. The trial court rescinded the revocation and the Commissioner appeals.

## ISSUE

Did the trial court err in concluding the Intoxilyzer test was not valid and reliable?

## ANALYSIS

Respondent challenged the validity of the test result. The Commissioner had the burden of making a prima facie showing that the administration of the Intoxilyzer test conformed to the procedure necessary to ensure its reliability. *See State v. Dille,* 258 N.W.2d 565, 567 (Minn.1977). This court has recognized the proponent can never establish the absolute reliability of a

test, but must show steps taken which reasonably eliminate the occurrence of contamination. *Tate v. Commissioner of Public Safety,* 356 N.W.2d 766, 768 (Minn.Ct. App.1984). Once prima facie reliability of test administration is established, it is incumbent upon respondent to suggest reasons why the test was untrustworthy. *Dille,* 258 N.W.2d at 568.

The Commissioner initially claimed this point was not raised in the petition for judicial review with sufficient specificity, but in his reply brief stated this court should reach the merits of the issue. We agree.

The trial court's determination the testing method used was not valid and reliable was based upon faults with the observation period. The court stated:

> In this case the officer sat across the desk from the subject and worked on her police reports rather than observing the subject. She has received no training as to why the subject is to be under observation and testified that she did not know why the subject is supposed to be under observation.

The trial court specifically found respondent was not under observation for 15–20 minutes, and concluded the testing method was not valid and reliable.

■ The fact the officer worked on her police reports during the observation period is not fatal. We have previously held similar lapses in observation do not invalidate the test, but instead provide the driver with an opportunity to suggest reasons as to why the lapse makes the test unreliable. *Melin v. Commissioner of Public Safety,* 384 N.W.2d 474 (Minn.Ct.App.1986); *Engen v. Commissioner of Public Safety,* 383 N.W.2d 399 (Minn.Ct.App.1986); *Tate,* 356 N.W.2d at 766.

Of more concern is that the officer had no training, did not know why the driver was to be observed, or what to observe. In *Scheper v. Commissioner of Public Safety,* 380 N.W.2d 222 (Minn.Ct.App.1986), an officer who observed a subject did not watch specifically for belching, but only to determine whether the subject ingested

anything. The driver contended the officer was not properly discharging the observation requirements. We noted that belches may be difficult to detect and that the duty to produce evidence the test was untrustworthy was appropriately placed on the driver in that situation. *Id.* at 224.

■ In this case, the lapse did not involve an action often concealed and difficult to detect. *Cf. id.* Instead, these facts present a situation where the officer had no understanding of the purpose of the procedure, thus making it impossible to ensure the reliability of the test. Although she testified the driver did nothing unusual when she was able to observe him, actions which could interfere with testing results may not seem noteworthy to the untrained eye. Under the extreme facts here, where the observing officer did not know the purpose of the observation period, the Commissioner did not meet his burden of making a prima facie showing that the administration of the test conformed to the procedure necessary to ensure its reliability. *See Haegele v. Commissioner of Public Safety,* 353 N.W.2d 704, 705 (Minn.Ct.App. 1984).

## DECISION

The trial court did not err when it determined the Commissioner did not meet his prima facie burden of proving the test was valid and reliable.

Affirmed.