**Larry Scott HOUNSELL,
Petitioner, Appellant,**

v.

**COMMISSIONER OF PUBLIC
SAFETY, Respondent.**

No. C3–86–1236.

Court of Appeals of Minnesota.

Feb. 24, 1987.

Linda L. Bogut, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Joel A. Watne, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Heard, considered and decided by RANDALL, P.J., and FOLEY and WOZNIAK, JJ.

## OPINION

FOLEY, Judge.

Larry Scott Hounsell appeals from an order sustaining the revocation of his driver's license pursuant to the Minnesota implied consent laws. Hounsell claims a burp contaminated his breath samples, rendering his Intoxilyzer test results invalid. We agree with the trial court that Hounsell failed to sufficiently impeach the credibility of his results. Accordingly, we affirm.

### FACTS

On May 6, 1986 at 1:45 a.m., Burnsville Police Officer Daniel Huberty stopped Hounsell for speeding. After administering three field sobriety tests and a preliminary breath test, Huberty arrested Hounsell for driving while under the influence of alcohol.

Huberty transported Hounsell to the Burnsville Police Station, and read him the implied consent advisory. Hounsell agreed to submit to a breath test. During a 15 to 20 minute observation period, Huberty and Hounsell were seated at a desk, where Huberty filled out reports. Huberty did not see or hear Hounsell burp during that time.

Officer Daniel Hughes, a certified Intoxilyzer operator, administered the breath test to Hounsell. Immediately prior to the test, Hughes asked Hounsell if he had put anything in his mouth during the last 15 or 20 minutes. Hounsell replied "no." Hughes did not ask Hounsell if he had belched or burped during that time.

Hounsell blew into the machine. The first test reading was .152, with a replicate

reading of .153. A second test produced readings of .137 and .138. The air blank reading of .000 was within acceptable limits, and the calibration reading was within the prescribed range of .100 to .120. The correlation between the two tests was 91%.

Hounsell's driver's license was revoked, and he appealed for a hearing pursuant to Minn.Stat. § 169.123, subd. 6 (1984). At the hearing, Hounsell testified that he had burped under his breath before the Intoxilyzer test was administered,[1] but did not tell the officers about the burp because he did not know it was important. Although Huberty testified that he did not see or hear Hounsell burp, he admitted on cross-examination that it was possible for someone to burp "without loud distinguishing noises."

Hughes testified that the Intoxilyzer was in proper working order. However, on cross-examination he stated:

> If there is residual mouth alcohol [from a burp or regurgitation], the intoxilyzer is designed—it has to have a steady climb of alcohol content. If it was a residual mouth alcohol, it would be an initial high and then it would decline, so in order to be a valid test, it has to be a steady climb of alcohol.

Upon re-direct examination, the Commissioner elicited the following explanation from Hughes:

> Q. You said that initially, residual alcohol in the mouth would affect the test. What do you mean by that?
>
> A. In order for it to record an accurate *reading*, it has to have a steady climb and reach a plateau, as far as alcohol level. If it is mouth alcohol, residual, it will initially be a high alcohol *reading* and once the air is passed through the mouth, the *reading* will get lower.
>
> Q. What would the instrument record then when something like that occurs?
>
> A. I don't believe it will give an accurate reading.

(Emphasis supplied.) Despite Hounsell's testimony that he had burped, the trial

court affirmed the revocation of his license. Hounsell has appealed.

## ISSUES

1. Has Hounsell properly challenged the admissibility of the Intoxilyzer test results?

2. Did Hounsell sufficiently impeach the credibility of the test results?

## ANALYSIS

### 1. *Admissibility of Test Results*

■ Hounsell claims that his test results were affected by the burp and that the trial court therefore erred by admitting the results into evidence. However, Hounsell did not object to the admission of the test results into evidence, but instead offered rebuttal evidence to impeach the credibility of those results.

A claim that test results should not have been admitted into evidence is different from a claim that the credibility of those results was adequately impeached. In *Bielejeski v. Commissioner of Public Safety*, 351 N.W.2d 664 (Minn.Ct.App.1984), this court explained:

> A breathalyzer test reading conducted by a certified operator may be admitted into evidence if it is established that the machine was in proper working order and the chemicals in proper condition. *City of St. Louis Park v. Quinn*, 289 Minn. 184, 182 N.W.2d 843 (1971).
>
> \*   \*   \*   \*   \*   \*
>
> The driver must then produce evidence to impeach the credibility of the test results. [*State, Department of Public Safety v. Habisch*, 313 N.W.2d 13, 16 (Minn.1981).]

*Id.* at 666. Any objection to the admissibility of evidence should be raised following the presentation of that evidence during the Commissioner's prima facie case. Once the test results have been admitted into evidence, the driver may then attempt to impeach those results.

Here, the Commissioner established a prima facie case that the Intoxilyzer was

---

1. The exact moment of the burp is unclear.

reliable, and Hounsell failed to object to the admission of the Intoxilyzer test results into evidence. Thus, the trial court did not err by admitting those results.

While Hounsell couches the issue on appeal in terms of the admissibility of the test results, we recognize that his arguments actually address the weight to be accorded those results. Therefore, we discuss the issue as though it were properly phrased.

### 2. Credibility of Test Results

■ A driver will not be successful in challenging Intoxilyzer test results if his arguments rest upon mere speculation that something might have occurred to invalidate those results. *Falaas v. Commissioner of Public Safety,* 388 N.W.2d 40, 42 (Minn.Ct.App.1986). In *Falaas,* this court refused to uphold a trial court's order rescinding the revocation of a driver's license simply because the observation period was deemed imperfect and the driver could have burped or put something in his mouth during that time. *Id.*

In *Kooi v. Commissioner of Public Safety,* 363 N.W.2d 487 (Minn.Ct.App. 1985), this court similarly reversed a trial court's determination that a test was unreliable due to improper observation of the driver, who had admitted that she had put nothing in her mouth prior to the test. *Id.* at 489. And, in *Tate v. Commissioner of Public Safety,* 356 N.W.2d 766 (Minn.Ct. App.1984), revocation of a driver's license was upheld even though the observation period was disrupted while the driver made a trip to the bathroom. The arresting officer testified in *Tate* that he had no reason to believe the driver ate or drank while in the bathroom, or placed anything in her mouth during that time. *Id.* at 767.

*Engen v. Commissioner of Public Safety,* 383 N.W.2d 399 (Minn.Ct.App.1986) involved allegations that a driver could have burped, thereby contaminating the results of her Intoxilyzer test. Again, this court reversed the trial court's rescission of the revocation, noting that the driver only testified that she "could have" belched or burped and that this was an insufficient basis upon which to rescind the license revocation. *Id.* at 401.

■ In each of the above cases, there was no testimony that the driver actually belched or burped or put something in his or her mouth. Here, on the other hand, Hounsell specifically testified that he burped prior to administration of the test. Nevertheless, the determination whether or not Hounsell's testimony should be believed is better left to the trial court, which had the opportunity to judge the demeanor and credibility of the witnesses. *See Thorud v. Commissioner of Public Safety,* 349 N.W.2d 343, 344 (Minn.Ct.App.1984).

Even if a driver can prove that he had something in his mouth, he must also demonstrate that the substance actually affected his test results. For example, in *Melin v. Commissioner of Public Safety,* 384 N.W.2d 474 (Minn.Ct.App.1986), a driver had been smoking when he was stopped, but his expert could not say how the smoke would have affected the test. This court held that the driver failed to meet his burden of showing that his test results were unreliable. *Id.* at 476–77.

Similarly, in *Pasek v. Commissioner of Public Safety,* 383 N.W.2d 1 (Minn.Ct.App. 1986), although the driver had snuff in his mouth during the test, the Commissioner offered testimony indicating that chewing tobacco and snuff will not affect a test. Again, this court concluded that the driver had not successfully challenged his test results. *Id.* at 3–4.

In *Hager v. Commissioner of Public Safety,* 382 N.W.2d 907 (Minn.Ct.App. 1986), an officer administered a breath test only five minutes after removing gum from a driver's mouth. Nonetheless, this court concluded that the driver had made no showing that the gum affected his test results or that the officer should have waited longer before administering the test. *Id.* at 909–10.

Hounsell claims that his situation is distinguishable because he sufficiently demonstrated that his test readings were affected by the burp. Specifically, he points to Hughes' opinion that if residual mouth alcohol were present, the machine would not

give an accurate reading. However, Hughes' testimony does not demonstrate that the test readings in this case were actually affected by any mouth alcohol.

Hounsell also argues that the drop between his first and second test readings demonstrates the presence of residual mouth alcohol; however, he fails to sufficiently substantiate this claim. While again he relies upon Hughes' testimony, the officer's explanation on re-direct refers only to climbs, plateaus and drops for each "reading." There was no testimony that when Hounsell blew into the machine each time the sample did not climb and level off as it should have.

### DECISION

The trial court's order upholding revocation of Hounsell's driver's license is affirmed.

Affirmed.