John B. PRZYMUS, Petitioner,
Appellant,

v.

COMMISSIONER OF PUBLIC
SAFETY, Respondent.

No. C4–92–69.

Court of Appeals of Minnesota.

Aug. 4, 1992.

Review Denied Sept. 15, 1992.

Dean S. Grau, Minneapolis, Kerry L. Scott, St. Paul, John W. Verrant, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Joel A. Watne, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Considered and decided by HUSPENI, P.J., and PETERSON and FOLEY,* JJ.

* Retired judge of the Court of Appeals, acting by appointment pursuant to Minn. Const. art. VI, § 2.

## OPINION

PETERSON, Judge.

John B. Przymus was arrested for driving while under the influence and his driver's license was revoked pursuant to the implied consent law. He petitioned for judicial review. The trial court sustained the revocation. Przymus appeals.

### FACTS

Appellant's driver's license was revoked pursuant to the implied consent law and appellant challenged the revocation. An implied consent hearing was held to consider appellant's challenge. At the hearing, appellant stipulated that on August 8, 1991 he was properly·stopped by Officer Christopher Vincent, that Vincent had probable cause to suspect that appellant was driving while under the influence of alcohol, and that the arrest was lawful. Testimony was presented on other issues.

Vincent testified that, after transporting appellant to the Carver county jail, he read appellant the implied consent advisory. Vincent made a telephone book and telephone available to appellant and asked him if he wished to contact an attorney. Vincent testified appellant said he did not want to call an attorney and he agreed to take a breath test.

Vincent observed appellant for 15–20 minutes, and did not see him belch, regurgitate, or put anything in his mouth. Vincent is not an Intoxilyzer operator, but, during his two years of law enforcement schooling and field training, he learned what he should look for before an Intoxilyzer test is administered.

Jailer Terry Malinowsky, a certified Intoxilyzer operator, testified he performed the Intoxilyzer test on appellant. All diagnostic, calibration and air blank tests were performed in the proper sequence and within acceptable limits. Appellant gave two breath samples, with a final reported value of .22.

Vincent testified appellant made one telephone call after the test, but never asked to consult with an attorney or for an additional test. Malinowsky could not recall if appellant requested either. Because the jailers would not hold a person whose test result is over .20, Vincent committed appellant to a detoxification center.

Appellant testified that after the officer read him the implied consent advisory, he said he would like to talk to an attorney. He was given a list of attorneys and a telephone to use. He called two numbers, but did not receive an answer. He wanted to try another number, but was told he could not delay the test and had to decide. Appellant agreed to take the test.

Appellant testified that when he saw the test result, he believed it was too high and requested an additional test, but the officers refused because they were sending him to detox. Appellant testified he also requested an additional test from the officer who transported him to the detox center and from personnel at the center, but his requests were denied.

Following the hearing, the parties submitted proposed findings. The trial court adopted the findings submitted by the Commissioner. John V. Przymus appeals.

### ISSUES

1. Were the trial court findings clearly erroneous?

2. Did the trial court properly refuse to rescind the license revocation as a sanction for the Commissioner's failure to comply with discovery requests?

3. Was appellant's right to consult counsel of his own choosing prior to testing violated?

4. Was appellant denied the right to consult counsel after testing?

5. Was appellant denied the right to additional testing?

6. Was the Intoxilyzer test accurately and reliably administered?

### ANALYSIS

#### I.

■ Appellant challenges the trial court's finding of fact that appellant did not request an additional alcohol concentra-

tion test after completing the test administered by Malinowsky. Findings of fact by the trial court will not be reversed unless clearly erroneous, and due regard must be given to the opportunity of the trial court to judge the credibility of the witnesses. Minn.R.Civ.P. 52.01.

The trial court specifically stated it found the officers' testimony that appellant did not request an additional test more credible than appellant's testimony that he did request an additional test. The trial court's finding was supported by the record, and was not clearly erroneous.

■ The findings the Commissioner submitted to the trial court included assertions of facts about the issues to which appellant stipulated. The findings were adopted by the trial court. Appellant argues that this court should disapprove the trial court's verbatim adoption of the Commissioner's findings. *See Sigurdson v. Isanti County*, 408 N.W.2d 654, 657 (Minn.App.1987), *pet. for rev. denied* (Minn. Aug. 19, 1987).

In *Sigurdson*, this court held that adopting proposed findings did not constitute reversible error per se, and that the clearly erroneous standard remains the proper standard of review. *Id.* Because there was no basis in the record for the Commissioner's proposed findings of fact regarding details related to the stop, probable cause, and the arrest, the trial court's adoption of the findings was clearly erroneous. However, because there are no challenges on appeal as to the merits of the stipulated issues, the error is harmless.

## II.

■ Appellant requested production of certain documents during the discovery process. The Commissioner ultimately produced the requested documents at the implied consent hearing. Because the documents were not produced until the hearing, the trial court offered appellant a continuance, but appellant chose to proceed. Appellant argues the trial court incorrectly concluded it did not have authority to rescind the driver's license revocation as a sanction for the Commissioner's failure to comply with discovery.

■ The choice of sanctions under Minn. R.Civ.P. 37.02(b) for failure to comply with discovery is within the trial court's discretion. *Chicago Greatwestern Office Condominium Ass'n v. Brooks*, 427 N.W.2d 728, 730 (Minn.App.1988). While appellant was understandably frustrated by the delayed production of the documents, the trial court did not abuse its discretion in declining to order the revocation rescinded as a discovery sanction.

When the Commissioner failed to produce the requested documents, appellant did not move to compel discovery. *See* Minn.R.Civ.P. 37.01. The Commissioner did not fail to comply with a court order. *See* Minn.R.Civ.P. 41.02(a); *Lampert Lumber Co. v. Joyce*, 405 N.W.2d 423, 425 (Minn.1987). There was no showing of prejudice such that a substantial right or advantage was lost by failure to provide the documents earlier, particularly where appellant declined the offer of a continuance. *See Sudheimer v. Sudheimer*, 372 N.W.2d 792, 794–95 (Minn.App.1985).

As appellant argues, this case is distinguishable from *Merritt v. Commissioner of Pub. Safety*, 424 N.W.2d 298, 299 (Minn. 1988), because here the Commissioner had clear notice of the request and did not comply promptly. However, the imposition of sanctions remains within the discretion of the trial court. *Merritt does not compel the sanction of rescission.*

## III.

■ Appellant next asserts that the policy of providing DWI arrestees with a list of local attorneys willing to accept night time telephone calls violated his right to a reasonable opportunity to consult counsel of his own choosing.

After considering conflicting testimony, the trial court found appellant declined to consult with an attorney prior to submitting to an Intoxilyzer breath test. In light of the finding that appellant made no request to consult counsel, it was not necessary for the trial court to consider whether appellant's right to consult counsel of his

own choosing was violated. Similarly, this court need not reach this issue.

## IV.

Appellant next claims he was denied the right to counsel and the right to additional testing under Minn.Stat. § 169.123, subd. 3 (1990). Appellant also contends that the policy of sending all motorists with an alcohol concentration greater than .20 to a detoxification center virtually assures requests for additional tests will be denied. He argues he sought counsel in part to assist in the exercise of his right to obtain an additional test, and that the officers hindered this effort.

Minn.Stat. § 169.123, subd. 3 provides, in part:

The person tested has the right to have someone of the person's own choosing administer a chemical test or tests in addition to any administered at the direction of the peace officer; provided, that the additional test sample on behalf of the person is obtained at the place where the person is in custody, after the test administered at the direction of a peace officer, and at no expense to the state. The failure or inability to obtain an additional test or tests by a person shall not preclude the admission in evidence of the test taken at the direction of a peace officer *unless the additional test was prevented or denied by the peace officer.*

(Emphasis added.)

In *Theel v. Commissioner of Pub. Safety,* 447 N.W.2d 472, 474 (Minn.App.1989), *pet. for rev. denied* (Minn. Jan. 8, 1990), this court held that where appellant wanted to call an attorney to assist him in exercising his right to an additional test, and the officer hindered his attempt, appellant's statutory right to obtain an additional test was denied.

Appellant's claims assume the credibility of his testimony. The trial court specifically found the testimony of Vincent and Malinowsky that appellant did not request an additional test more credible than appellant's testimony that he requested an additional test. If appellant did not request an additional test, the officers could not have hindered his attempt to obtain one.

■ Appellant also argues the implied consent advisory Vincent read to him before testing did not correctly advise him of his post-test right to counsel. Appellant claims he should have been advised of his right to counsel after testing, as well as before testing.

In *Friedman v. Commissioner of Pub. Safety,* 473 N.W.2d 828, 835 (Minn.1991), the supreme court held that under Minn. Const. art. I, § 6, an individual has the right to obtain legal advice before deciding whether to undergo testing to determine alcohol concentration. *Friedman* invalidated prior law only to the extent that the right to counsel did not attach until after testing. *Friedman* did not establish an additional right to counsel; it specified when the existing right to counsel attached. *Friedman* does not require that an officer advise a driver of the right to counsel before testing and advise the driver of the same right once again after testing. However, a driver who does not exercise the right to obtain legal advice before testing may assert the right after testing.

## V.

■ Finally, appellant argues the Intoxilyzer test was not accurately and reliably administered. The Commissioner has the burden of making a prima facie showing that the administration of the Intoxilyzer test conformed to the procedure necessary to ensure its reliability. *State v. Dille,* 258 N.W.2d 565, 567 (Minn.1977); *Tate v. Commissioner of Pub. Safety,* 356 N.W.2d 766, 767–78 (Minn.App.1984). Once prima facie reliability of test administration is established, it is incumbent on the opponent of the test to suggest reasons why the test was untrustworthy. *Dille,* 258 N.W.2d at 568.

■ Appellant raises the issue of whether the test result reflected the dissipation of mouth alcohol, possibly by a belch or burp, rendering it unreliable. Mere speculation of a burp or belch is insufficient.

*Engen v. Commissioner of Pub. Safety,* 383 N.W.2d 399, 401 (Minn.App.1986).

Appellant also challenges the observation period, relying upon *McGregor v. Commissioner of Pub. Safety,* 386 N.W.2d 339, 340 (Minn.App.1986). There, the officer who was conducting the observation period had no training and did not know why the driver was to be observed, or what to observe. *Id.* Unlike *McGregor,* the officer here testified he had learned from his training the purpose of the observation period, and that he did not observe appellant place anything into his mouth, belch, or regurgitate. The trial court concluded that the Intoxilyzer test reliably and accurately indicated an alcohol concentration of .10 or more. This determination is not clearly erroneous.

### DECISION

The order of the trial court sustaining the revocation is affirmed.

Affirmed.